1   KEKER, VAN NEST & PETERS LLP
    BENJAMIN BERKOWITZ - # 244441
2   bberkowitz@keker.com
    MICHELLE YBARRA - # 260697
3   mybarra@keker.com
    CODY S. HARRIS - # 255302
4   charris@keker.com
    KRISTIN HUCEK - # 321853
5   khucek@keker.com
    GREGORY WASHINGTON - # 318796
6   gwashington@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    633 Battery Street
8   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
9   Facsimile:    415 397 7188

10  Attorneys for Defendant
    GOOGLE LLC
11                          UNITED STATES DISTRICT COURT

12                         NORTHERN DISTRICT OF CALIFORNIA

13                              SAN FRANCISCO DIVISION

14

15  LEFT FIELD HOLDINGS, et al.,                  Case No. 3:22-CV-01462-VC

16              Plaintiffs,                        **GOOGLE LLC'S NOTICE OF MOTION
                                                   AND MOTION TO DISMISS
17         v.                                      PLAINTIFFS' FIRST AMENDED
                                                   CLASS ACTION COMPLAINT;
18  GOOGLE LLC, a Delaware limited liability       MEMORANDUM OF POINTS AND
    company,                                       AUTHORITIES IN SUPPORT**
19
                Defendant.                         **Pursuant to Fed. R. Civ. P. 12(b)(6), 9(b)**
20
                                                   Date:        September 29, 2022
21                                                 Time:        2:30 p.m.
                                                   Court:       4; 17th Floor
22                                                 Judge:       Hon. Vince Chhabria

23                                                 Date Filed:  March 8, 2022

24                                                 Trial Date:  Not Yet Set

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................3

    A.  Plaintiffs contract with Delivery Providers to fulfill online food orders. ...............3

    B.  Google Business Profiles and Food Ordering Feature ..............................................5

III. LEGAL STANDARD ........................................................................................8

IV. ARGUMENT .....................................................................................................9

    A.  Google's alleged conduct is protected as nominative fair use. ................................9

    B.  Plaintiffs lack standing under the Lanham Act. ......................................................13

        1.  Plaintiffs have alleged no injury to their reputation or sales. ...................14

        2.  Plaintiffs cannot satisfy the proximate-cause requirement. ......................16

    C.  Plaintiffs' false advertising claim fails. .................................................................17

    D.  Plaintiffs fail to allege a counterfeiting claim. ......................................................21

V.  CONCLUSION .................................................................................................24

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

*1800 Get Thin, LLC v. Hiltzik,*
   2011 WL 3206486 (C.D. Cal. July 25, 2011) ........................................................................10

5

*578539 B.C., Ltd. v. Kortz,*
   2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ......................................................................13

6

*Alfasigma USA, Inc. v. First Databank, Inc.,*
   2022 WL 899848 (N.D. Cal. Mar. 28, 2022) ........................................................................17

7

8

*Alfasigma USA, Inc. v. First Databank, Inc.,*
   525 F. Supp. 3d 1088 (N.D. Cal. 2021) ................................................................................20

9

10

*Applied Underwriters, Inc. v. Lichtenegger,*
   913 F.3d 884 (9th Cir. 2019) ................................................................................................10

11

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
   2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ......................................................................10

12

13

*Arcona, Inc. v. Farmacy Beauty, LLC,*
   976 F.3d 1079 (9th Cir. 2020) .........................................................................................21, 22

14

*Ariix, LLC v. NutriSystem Corp.,*
   985 F.3d 1107 (9th Cir. 2021) .........................................................................................19, 20

15

16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................8, 11

17

18

*Beachbody, LLC v. Universal Nutrients, LLC,*
   2016 WL 3912014 (C.D. Cal. July 18, 2016) ......................................................................10

19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................................8

20

21

*Belmora LLC v. Bayer Consumer Care AG,*
   819 F.3d 697 (4th Cir. 2016) ................................................................................................13

22

23

*Cairns v. Franklin Mint Co.,*
   292 F.3d 1139 (9th Cir. 2002) ...........................................................................................9, 13

24

*Carrico v. City & Cnty. of San Francisco,*
   656 F.3d 1002 (9th Cir. 2011) ................................................................................................9

25

26

*Carter v. Oath Holdings, Inc.,*
   2018 WL 3067985 (N.D. Cal. June 21, 2018) ....................................................................11, 23

27

28

ii

*Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*,
    2020 WL 6891876 (N.D. Cal. Nov. 24, 2020) ......................................................14, 15

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
    2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ...............................................................19

*Clorox Company v. Reckitt Benckiser Grp. PLC*,
    398 F. Supp. 3d 623 (N.D. Cal. 2019) ........................................................................19

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
    256 F. Supp. 3d 1099 (S.D. Cal. 2017).......................................................................10

*Ely Holdings Ltd. v. O'Keeffe's, Inc.*,
    2019 WL 3779197 (N.D. Cal. Aug. 12, 2019) .........................................................8, 19

*Gearsource Holdings, LLC v. Google LLC*,
    2020 WL 3833258 (N.D. Cal. July 8, 2020) ...............................................................18

*Genus Lifesciences v. Lannett Co., Inc.*,
    378 F. Supp. 3d 823 (N.D. Cal. 2019) ........................................................................19

*Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*,
    2016 WL 7479317 (C.D. Cal. Dec. 29, 2016) .............................................................22

*Gucci Am., Inc. v. Guess, Inc.*,
    868 F. Supp. 2d 207 (S.D.N.Y. 2012)........................................................................21

*Hasbro, Inc. v. Asus Comput. Int'l, Inc.*,
    2012 WL 13012663 (C.D. Cal. Mar. 23, 2012)...........................................................12

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.*,
    741 Fed. App'x. 393 (9th Cir. 2018) ..........................................................................21

*Lasoff v. Amazon.com, Inc.*,
    741 Fed. App'x 400 (9th Cir. 2018) ...........................................................................18

*LegalForce, Inc. v. LegalZoom.com, Inc.*,
    2019 WL 2088416 (N.D. Cal. May 13, 2019) .............................................................13

*Lexmark Inter., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).........................................................................................*passim*

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    658 F.3d 936 (9th Cir. 2011) ..............................................................................2, 21

*Maffick LLC v. Facebook, Inc.*,
    2021 WL 1893074 (N.D. Cal. May 11, 2021) .........................................................16, 20

1882087

*Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*,
  707 F.2d 1054 (9th Cir. 1983) .................................................................22

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
  804 F.3d 930 (9th Cir. 2015) ..............................................12, 22, 23

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ...............................................................12

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) .......................................................... *passim*

*Parks LLC v. Tyson Foods, Inc.*,
  863 F.3d 220 (3d Cir. 2017)...................................................................18

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
  371 F. Supp. 3d 652 (N.D. Cal. 2019) ...................................................10

*Playboy Enters., Inc. v. Welles*,
  279 F.3d 796 (9th Cir. 2002) ...........................................................10, 11

*Prestonettes, Inc. v. Coty*,
  264 U.S. 359 (1924).................................................................................9

*Salvati v. BAC Home Loans Servicing, LP*,
  2011 WL 13217977 (C.D. Cal. Jan. 18, 2011) .......................................14

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
  53 F. 3d 1073 (9th Cir. 1995) ................................................................22

*Shell Trademark Mgmt. BV v. Canadian Am. Oil Co., Inc.*,
  2002 WL 32104586 (N.D. Cal. May 21, 2002)......................................23

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ...................................................................8

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...................................................................8

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
  2022 WL 612669 (9th Cir. Mar. 2, 2022)........................................14, 15

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
  2020 WL 248164 (D. Ariz. Jan. 16, 2020) ..............................14, 15, 17

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ........................................................ *passim*

iv

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................................8

*Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*,
    2019 WL 1242446 (S.D. Cal. Mar. 18, 2019) .................................................14, 18

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ...........................................................2, 18, 20

*Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*,
    106 F.3d 894 (9th Cir. 1997) ...............................................................................21

**Federal Statutes**

15 U.S.C. § 1114..................................................................................................................1

15 U.S.C. § 1127............................................................................................................1, 22

Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1) .................................................................18

**Rules**

Fed. R. Civ. P. 9.......................................................................................................1, 2, 8, 19

Fed. R. Civ. P. 12...............................................................................................................1, 8

**Other Authorities**

Jennifer E. Rothman, *Initial Interest Confusion: Standing at the Crossroads of Trademark Law*, 27 Cardozo L. Rev. 105, 124 (2005)..............................................23

Restatement (Second) of Torts § 892A..........................................................................15

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:22-CV-01462-VC

1882087

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on September 29, 2022, at 2:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Vince Chhabria, Courtroom 5, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will and hereby does move this Court to dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiffs Left Field Holdings I–VI and Everfresh Endeavors (collectively, "Plaintiffs") in its entirety and with prejudice for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, Google's request for judicial notice filed concurrently herewith, and the declaration of Kristin Hucek with the exhibits attached thereto in support of the same, and on all pleadings and papers on file or to be filed in the above-entitled action, on the arguments of counsel, and on any other matters that may properly come before the Court for its consideration.

The specific issues raised through Google's motion to dismiss are as follows:

1. Whether Google's alleged conduct is protected under the doctrine of nominative fair use;

2. Whether Plaintiffs lack standing to pursue claims for false advertising and false association under the Lanham Act;

3. Whether Plaintiffs have failed to state a claim for false advertising under the Lanham Act; and

4. Whether Plaintiffs have failed to state a claim for counterfeiting under 15 U.S.C. §§ 1114, 1127.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     INTRODUCTION** [1]

3         This is a purported class action in search of a legal theory. Plaintiffs are owners and

4   operators of Lime Fresh Mexican Grill restaurants in and around Miami, Florida, who seek to

5   represent a nationwide class of nearly all restaurants in America. Plaintiffs initially filed this suit

6   in March 2022, alleging that Google schemed with third-party delivery providers ("Delivery

7   Providers"), such as DoorDash and Uber Eats, to dupe customers who use Google to search for

8   Lime Fresh restaurants into ordering food using Google's "Order Online" button. Plaintiffs

9   alleged that when a customer clicked Google's "Order Online" button, Google routed the order to

10  a Delivery Provider and took a cut of the fees paid by Plaintiffs to the Delivery Provider—a

11  baseless allegation that Plaintiffs abandoned after Google warned them that it was false. *See*

12  Compl., ECF 1, ¶ 6.

13        Plaintiffs' new theories are equally dubious. The Amended Complaint alleges that

14  Google's "Order Online" button—displayed in search results directly under the restaurant's

15  name, location, phone number, and website—"illegally divert[s] consumers" from the restaurant's

16  website by allowing them to place their order with Delivery Providers *with whom the restaurant*

17  *has contracted to fulfill online food orders*. FAC, ECF 41, ¶ 98. Plaintiffs allege that in so doing,

18  Google infringed Plaintiffs' trademark and tradenames, violated the Lanham Act's prohibition on

19  false advertising and false association, and engaged in counterfeiting. Plaintiffs' misguided claims

20  fail for at least the following reasons.

21        **First,** Google's alleged conduct is protected under the nominative fair use doctrine. That

22  doctrine protects a defendant's use of a trademark to reference the mark holder and its products

23  and services. That is precisely what Plaintiffs allege here: that Google uses Plaintiffs' tradenames

24  and trademark to identify *Plaintiffs' own food offerings and delivery options*. Where, as here, "use

25  of the trademark does not attempt to capitalize on consumer confusion or to appropriate the

26

27  ───────────────────

[1] Throughout this brief, unless otherwise stated, emphases are added to quotations, and internal
28  punctuation, alterations, and citations are omitted therefrom.

1

1882087

cachet of one product for a different one," it "lies outside the strictures of trademark law" because it neither "implicate[s] the source-identification function that is the purpose of trademark law" nor "constitutes unfair competition." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Because Plaintiffs' allegations demonstrate that Google's alleged use is nominative, and therefore protected, the Court should dismiss Plaintiffs' complaint in its entirety.

**Second,** Plaintiffs' claims for false association and false advertising under the Lanham Act claims fail for the additional reason that Plaintiffs lack standing to assert them. Plaintiffs fail to allege facts showing that Google's alleged conduct resulted in any injury to their reputation or sales, or that any consumer suffered "deception" that caused them to "withhold trade" from Plaintiffs. *Lexmark Inter., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 (2014). At most, Plaintiffs complain that some orders initiated with Google's "Order Online" button may require Plaintiffs to pay Delivery Provider fees that they would prefer not to incur, even though Plaintiffs concede that they voluntarily entered into contracts with Delivery Providers that obligate them to do so. That is not a cognizable injury sufficient to establish standing under the Lanham Act.

**Third,** Plaintiffs' false advertising claim also fails because they have not alleged that Google made any material, false statement in commercial advertising that influenced consumers' purchasing decisions. *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014). Plaintiffs' only allegation in support of this claim—that "Google's unauthorized and deceptive use of Plaintiffs' and class members' tradenames . . . is [] a false representation," FAC ¶ 149—falls far short of Rule 9(b)'s heightened pleading standard. Plaintiffs' conclusory allegations are insufficient to state a claim.

**Fourth,** Plaintiffs' counterfeiting claim is defective because Plaintiffs have not alleged that Google uses Plaintiffs' mark on services identical to those covered by Plaintiffs' registration in an attempt to pass itself off as Plaintiff. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945-46 (9th Cir. 2011). Plaintiffs do not allege that Google provides restaurant or takeout services; Google provides Internet search results linking to relevant businesses in

response to Search and Maps queries. Moreover, Plaintiffs' allegations confirm that Google uses their mark to ***accurately*** describe Plaintiffs' *own products and services*. Because they cannot show likelihood of confusion, Plaintiffs' counterfeiting claim fails as a matter of law.

For these reasons, and as explained further below, the Court should dismiss Plaintiffs' complaint in its entirety.

## II.      BACKGROUND [2]

### A.      Plaintiffs contract with Delivery Providers to fulfill online food orders.

Plaintiffs Left Field Holdings I–VI, LLC operate a series of "fast casual" Lime Fresh Mexican Grill restaurants ("Lime Fresh") in and around Miami, Florida, as franchisees of Plaintiff Everfresh Endeavors.[3] FAC ¶¶ 13–20, 26. All of Plaintiffs' Lime Fresh locations—Lime Fresh Dadeland, Lime Fresh Doral, Lime Fresh Midtown, Lime Fresh South Beach, and Lime Fresh West Kendall—"are under common ownership and management." *Id.* ¶¶ 13–18, 26. The Amended Complaint does not allege that the Left Field Plaintiffs hold any registered tradenames or trademarks but identifies Everfresh as the owner of "LIME FRESH MEXICAN GRILL," a service mark consisting of standard characters "without claim to any particular font, style, size, or color." FAC, Ex. C, ECF 41-3.

Plaintiffs maintain a branded order-taking website at www.limefresh.com (the "Lime Fresh website"), where consumers can place delivery and take-out orders from Plaintiffs' restaurants. *See* FAC ¶ 38. Orders can be placed directly from the Lime Fresh website using an "Order Direct Online" or "Order Takeout or Delivery" button, or by clicking on links to available third-party food delivery companies for the selected Lime Fresh location:

---

[2] For the purposes of this motion only, Google treats Plaintiffs' allegations as true.

[3] "Plaintiffs" refers collectively to Plaintiffs Left Field Holdings I–VI, LLC and Plaintiff Everfresh Endeavors. "The Left Field Plaintiffs" refers specifically to Plaintiffs Left Field Holdings I–VI, LLC, and "Everfresh" refers to their franchisor, Everfresh Endeavors.

**DORAL**

Open for Pick Up & Delivery

Curbside Pickup Available

8484 NW 36th St

305-463-7788

SUNDAY - THURSDAY 11 AM to 10 PM

FRIDAY - SATURDAY 11 AM to 11 PM

**ORDER DIRECT ONLINE**   Delivery options: 

**SOUTH BEACH**

Open for Pick Up & Delivery

Curbside Pickup Available

1439 Alton Road

786-420-5463

SUNDAY - THURSDAY 11 AM to 10 PM

FRIDAY - SATURDAY 11 AM to 11 PM

**ORDER TAKEOUT OR DELIVERY**   **ORDER CATERING**

Delivery options: 

*See* Decl. of Kristin Hucek in Support of Google LLC's Request for Judicial Notice ("Hucek Decl."), Ex. 1. Plaintiffs refer to these third-party food delivery companies, like Postmates, DoorDash, Grubhub, and Uber Eats, as "Delivery Providers." FAC ¶ 5. Plaintiffs do not fulfill delivery orders placed through the Lime Fresh website themselves. Rather, Plaintiffs allege that they have "entered into an agreement with a delivery service (DoorDash)" to do so. *Id*. ¶ 38.[4] Under DoorDash's terms of service, merchants like Plaintiffs agree to permit DoorDash to use their trademarks and business names. *See* Hucek Decl. Ex. 9 at ¶¶ 5.3.1, 16.29. "All orders placed by consumers on the Lime Fresh website are routed to the specific Lime Fresh restaurant selected by the consumer upon check-out, and all revenues received for each order flow to the designated restaurant." FAC ¶ 38. Despite alleging that they "vastly prefer to capture orders directly through their own order-taking websites and apps," *id.* ¶ 35, nothing on the Lime Fresh website reflects Plaintiffs' apparent preference. *See* Hucek Decl. ¶ 2.

According to Plaintiffs, Delivery Providers typically offer two services: (1) "proprietary, independently branded websites and mobile applications (collectively, 'platforms') that allow consumers to place delivery and take-out orders with restaurants made available within their platforms;" and (2) "scheduling and mapping technologies . . . to connect and route delivery

---

[4] In a single sentence of their 36-page complaint, Plaintiffs allege that in one instance, the "Landing Page" for one of their restaurants included a link to Caviar, a Delivery Provider with whom Plaintiffs allege they "do not have a relationship with." *See* FAC ¶ 110(c). (DoorDash acquired Caviar on October 31, 2019, which predates the screenshots included in the Amended Complaint. *See id.* & Fig. 11; https://www.sec.gov/Archives/edgar/data/1512673/000119312519281289/d785633dex991.htm.) In any event, Google also provides restaurants with information on how to remove links to Delivery Providers, as well as how to set their own preferred links. *See* Hucek Decl. Ex. 8.

4

drivers to consumers." FAC ¶ 30. Plaintiffs contend that restaurants rarely partner with a Delivery Provider "to make a profit" because their "fees are simply too high"; instead, Plaintiffs speculate that "a restaurant's usual goal is to capture new customers that may later place orders with the restaurant outside of the Delivery Providers' expensive platforms." *Id.* ¶ 33.

Plaintiffs concede, however, that they pay Delivery Provider fees even for orders placed on the Lime Fresh website. *See* FAC 38 n.5 ("For each delivery order from Lime Fresh's website, Plaintiffs pay their designated delivery service (i.e., DoorDash) a net fee of approximately $2 per order."). Although Plaintiffs allege that they have entered into "signed agreements with various authorized Delivery Providers," *id.* ¶ 29, they fail to specifically identify any provider other than DoorDash—even though the Lime Fresh website links to and invites customers to order from multiple others. *See* Hucek Decl. Ex 1 (showing "Delivery options" linking to Uber Eats, Postmates, DoorDash, and Grubhub). Other than DoorDash, Plaintiffs nowhere identify the fees they incur for orders fulfilled by Delivery Providers. Nor do Plaintiffs allege that they are charged the fees that Delivery Providers "typically charge[]" and that are cited in the Amended Complaint. *See* FAC ¶¶ 29, 33–35.[5]

**B.    Google Business Profiles and Food Ordering Feature**

Plaintiffs make clear that they rely on Google to direct consumers to their restaurants. As Plaintiffs allege, consumers "rarely remember a restaurant's phone number, address, or website URL" and "typically turn to an internet search engine [that is] usually Google" for that information. *Id.* ¶ 40. Plaintiffs allege that "when Google determines that a user is searching for a particular business," it displays information regarding that on the right-hand side of the user's screen. *Id.* ¶ 47. For restaurants, this information appears in what Plaintiffs call the "Restaurant Information Box." *Id.* ¶ 48. Along with images of the restaurant, the box displays "the

---

[5] For example, although Plaintiffs allege that Postmates charges "between 6%–30% of each order," FAC ¶ 34, Plaintiffs nowhere allege what fees may apply to *their* contract with Postmates. Similarly, although Plaintiffs attach a copy of an Uber Eats contract, *id.*, Ex. B, they nowhere allege that they have agreed to pay the fees set forth in that agreement, or whether they have negotiated different fees, as the agreement contemplates.  *See id.* at section 5.2 (contemplating that the parties may agree to service fees different than those provided for in the contract).

1882087

restaurant's tradename, address, hours of operation, and phone number," as well as links or buttons that allow the user to call the restaurant, obtain directions to it, or access its website. *Id.* ¶ 54. This information is displayed in a consistent font and style. *See id.* ¶ 55, Fig. 4.

Google obtains the information in various ways. It offers "Business Profile," a free tool that allows restaurants to control the information Google displays about their business in response to queries on Google Search and Maps. *See* Hucek Decl. Exs. 2, 3.  Restaurants that have verified their Business Profiles can edit their name, hours, phone number, website, whether they offer "Dine-in" or "Curbside pickup," display their menu, and identify takeout and delivery options, including their preferred means of delivery. Hucek Decl. Exs. 3-5. For example, Lime Fresh Dadeland indicated through its Business Profile that it prefers online orders be placed through the Lime Fresh website, with that preference then displayed to consumers:



*See* Hucek Decl. Ex. 5. In addition to receiving this information from restaurants directly, Google also compiles it from publicly available sources, such as a restaurant's official website, or may receive it from the restaurant's authorized Delivery Providers. Hucek Decl. Ex. 6.

Plaintiffs allege that at some point in 2019, Google began placing an "Order Online" button in the Restaurant Information Box beneath restaurants' tradenames, which directs consumers to one of two different webpages: the so-called "Landing Page" or "Storefront."[6] *See*

---

[6] Plaintiffs coined the terms "Order Online," "Landing Page," and "Storefront," in their Amended Complaint. *See, e.g.*, FAC ¶¶ 63, 65, 102. Although this terminology is Plaintiffs', and not Google's usual nomenclature, Google adopts it in this motion for the Court's convenience.

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:22-CV-01462-VC

1882087

FAC ¶¶ 55, 65, 102–104. Plaintiffs allege that the Landing Page "prominently displays" the restaurant's "tradename, address, and images of the restaurant," *id.* ¶ 105, as reflected below:



*Figure 10: Google's Landing webpage (Captured approximately 11/2/2021)*

*Id.* at ¶ 102, Fig. 10. The Landing Page also includes links to Delivery Providers, which users may click to be "directed (or linked) to the Delivery Provider's website." *Id.* ¶¶ 106–107. Plaintiffs contend that the Landing Page "is substantially similar in design, componentry, and features for all Plaintiffs and class members." *Id.* ¶ 103.

Alternatively, clicking the "Order Online" button directs users to the Storefront, where they "can place orders for the restaurant's food items." *Id.* ¶¶ 63, 65. The Storefront "prominently displays the restaurant's tradename at the top of the website," and "is substantially similar in design, componentry, and features, for all Plaintiffs and class members." *Id.* ¶¶ 66, 68. The Storefront includes the restaurant's physical and website address, and links to entities with whom the customer may place a delivery or takeout order. *See id.* at ¶ 65, Fig. 5 & Ex. A. These appear under the text "Place order with," and include links to Delivery Providers, as well as the restaurant itself. *Id.* at Ex. A (reflecting cropped screenshots of Elephant & Castle mobile Storefront); Hucek Decl. Ex. 7 (screenshot of the Elephant & Castle desktop Storefront). Plaintiffs allege that a customer may place an order directly with the restaurant by selecting it

from the "Place order with" options; or, they may select a Delivery Provider. In the latter scenario, Plaintiffs allege that the Delivery Provider "routes the order to the restaurant just as if the order originated from the receiving Delivery Provider's proprietary platforms" and charges the restaurant fees to fulfill it. FAC ¶ 72.

Plaintiffs nowhere allege that Google receives any portion of those fees or any other revenue from Storefront orders. Instead, they speculate that Google benefits by "driving increased user engagement," aiding its advertising business, and by "capturing" some unspecified "value" from Delivery Providers. *Id.* ¶ 95. Plaintiffs contend that Google also benefits "by forcing all consumers ordering food within the platform to register and pay for the items using Google Pay," Google's digital wallet and online payment system. *Id.* ¶¶ 91–92. But Google Pay is merely Google's online payment system for accepting credit card transactions and is free to use for both customers and merchants. *See* Hucek Decl. ¶ 3. Notably, it is also Plaintiffs' own chosen default payment method for orders placed directly from the Lime Fresh website. *Id.*

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing a right to relief that rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Nor must the Court accept as true allegations contradicted by matters properly subject to judicial notice. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Claims sounding in fraud—including false advertising under the Lanham Act—are subject to Rule 9(b)'s heightened pleading requirements. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1006 (9th Cir. 2003); *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, 2019 WL 3779197, at *4 (N.D. Cal. Aug. 12, 2019).

Dismissal is proper when the complaint either lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable theory. *See Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). If "amendment would be futile," dismissal with prejudice is appropriate.

1   *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

2   **IV.   ARGUMENT**

3       **A.      Google's alleged conduct is protected as nominative fair use.**

4       Plaintiffs' claims fail as a matter of law because Google's alleged conduct is protected

5   under the doctrine of nominative fair use. That doctrine applies when the defendant uses the

6   plaintiff's tradename or trademark to describe the plaintiff or its own product or service. *See*

7   *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). Nominative fair use "allows

8   such truthful use of a mark, even if the speaker fails to expressly disavow association with the

9   trademark holder." *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1177 (9th Cir.

10  2010). And for good reason. As Justice Holmes put it nearly a century ago, "When the mark is

11  used in a way that does not deceive the public we see no such sanctity in the word as to prevent

12  its being used to tell the truth. It is not taboo." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368

13  (1924). And as the Ninth Circuit recognized twenty years ago, "[m]uch useful social and

14  commercial discourse would be all but impossible if speakers were under threat of an

15  infringement lawsuit every time they made reference to a person, company or product by using its

16  trademark." *New Kids*, 971 F.2d at 307.

17      In *New Kids*, the Ninth Circuit has established a three-factor test to determine whether a

18  defendant's use of a mark constitutes nominative fair use: (1) "the product or service in question

19  must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark

20  [] may be used as is reasonably necessary to identify the product or service"; and (3) "the user

21  must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by

22

23

24

25

26

27

28

9

1882087

the trademark holder." 971 F.2d at 308. Google's alleged conduct satisfies all three factors.[7]

**First,** Plaintiffs concede that their restaurants are not readily identifiable without reference to their tradenames or trademark—that is in fact how consumers find them. *See* FAC ¶ 49 n.8 (describing how Google shows users a map listing nearby restaurants by name); ¶¶ 53–54 (alleging that Google matches a user's search query with "the restaurant's tradename"). In fact, Plaintiffs admit that they **depend** on Google's Search and Maps functions to identify their restaurants by name and to provide consumers with relevant information, including their websites, phone numbers, and addresses. *Id.* at ¶ 40. Because listing a restaurant's phone number, address, website, or available ordering options would be "nearly impossible to do without mentioning" the restaurant's name, the first factor is satisfied. *Toyota*, 610 F.3d at 1181.

**Second,** Plaintiffs concede that Google uses only so much of Plaintiffs' tradenames "as is reasonably necessary to identify" their products. *New Kids*, 971 F.2d at 308. Plaintiffs acknowledge that Google references only Plaintiffs' restaurants' names—not their logos, color schemes, or any other aspect of their brand identity.[8] *See* FAC ¶ 55, Fig. 4 (showing "Lime Fresh Mexican Grill" in the same font as the restaurant description and service options).[9] Accordingly, the second *New Kids* factor is satisfied. *See New Kids*, 971 F.2d at 308 (holding second factor satisfied where defendant did not "use [plaintiff's] distinctive logo"); *Playboy Enters., Inc. v.*

---

[7] Courts in this Circuit have considered and dismissed causes of action on nominative fair use grounds at the motion to dismiss stage. *See, e.g.*, *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (affirming dismissal on nominative fair use grounds); *Toyota*, 610 F.3d at 1185 (vacating on nominative fair use grounds district court injunction that applied to service marks, trademarks, and trade names); *PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652 (N.D. Cal. 2019) (dismissing trademark claim on nominative fair use grounds); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1112 (S.D. Cal. 2017) (same, and listing cases); *Beachbody, LLC v. Universal Nutrients, LLC*, 2016 WL 3912014, at *2 (C.D. Cal. July 18, 2016) (same); *1800 Get Thin, LLC v. Hiltzik*, 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011) (same); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *3 (S.D. Cal. Apr. 28, 2011) (same).

[8] Although Plaintiffs also allege trademark infringement, the one trademark that they assert is a service mark for LIME FRESH MEXICAN GRILL in "standard characters without claim to any particular font, style, size, or color." FAC, Ex. C, ECF 41-3 at 2.

[9] Plaintiffs' class allegations further confirm this point: they assert that the Restaurant Information Box is in no way tailored to each restaurant, and "is consistent in design, components, and features . . . for each restaurant within the class." FAC ¶ 52.

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:22-CV-01462-VC

1882087

*Welles*, 279 F.3d 796, 802 (9th Cir. 2002) (holding second factor satisfied where defendant's advertisements and headlines used only trademarked words).

**Third,** Plaintiffs allege no *facts* showing that Google has done anything to falsely suggest sponsorship under the third *New Kids* factor. Plaintiffs allege that Google has done nothing more than list Plaintiffs' restaurant names in plain font at the top of webpages that include links to Plaintiffs' own website and the Delivery Providers with whom Plaintiffs have contracted. To be sure, the Amended Complaint includes boilerplate allegations that Google's webpages are "deceptively branded" and cause consumers to believe that Plaintiffs sponsored or approved them. *See, e.g.*, FAC ¶¶ 6–9, 149–51. But those conclusory statements are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79.

At most, Plaintiffs allege that placing Plaintiffs' restaurant names at the top of the Storefront and Landing Page, and above the "Order Online" button implies sponsorship. *See, e.g.*, FAC ¶¶ 7, 58. But as explained above, Plaintiffs nowhere allege that Google has used the visual trappings of their branding, logos, or imagery—the hallmarks of a false suggestion of sponsorship under the third *New Kids* factor. *See, e.g.*, *Toyota*, 610 F.3d 1181; *Playboy Enters.*, 279 F.3d at 802. The common-sensical fact that a restaurant's name appears at the top of a Google webpage in response to a user's search query for information about that restaurant hardly implies sponsorship, and even less so given that the clarifying language "Place order with" appears below the restaurant's name. Indeed, "merely returning search results to purportedly display a trademark does not show that Defendant is liable under the Lanham Act." *Carter v. Oath Holdings, Inc.*, 2018 WL 3067985, at *2 (N.D. Cal. June 21, 2018).

Moreover, when evaluating whether sponsorship is implied in an "online marketplace," courts must conduct their analysis from the perspective of a "reasonably prudent consumer accustomed to shopping online" for the product at issue. *Toyota*, 610 F.3d at 1176 (noting that "[u]nreasonable, imprudent and inexperienced web-shoppers are not relevant"). Ten years ago, the Ninth Circuit explained that the degree of care ascribed to online consumers "is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes

1882087

commonplace." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011). Consumers have only become more sophisticated in the decade since, as online food ordering has become ubiquitous. Today, a reasonably prudent consumer accustomed to ordering food over the Internet is generally aware of the different channels through which an order can be placed and fulfilled. *Cf. Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) (concluding that a "reasonably prudent consumer accustomed to shopping online" would not be confused by Amazon's search results page); *Toyota*, 610 F.3d at 1178 (noting that "[c]onsumers who use the internet for shopping are generally quite sophisticated" in being able to distinguish between websites). Those consumers also understand that Google acts as an information clearinghouse, directing consumers to different options that are available online. Indeed, a court in this Circuit has recognized that reasonable consumers "understand that when executing a key word search" on Google—"the world's largest search engine"—that "the results they are presented with originate from thousands of sources, if not more." *Hasbro, Inc. v. Asus Comput. Int'l, Inc.*, 2012 WL 13012663, at *9 (C.D. Cal. Mar. 23, 2012).

Plaintiffs' own allegations confirm that their customers are a sophisticated bunch; the Amended Complaint cites a *Bloomberg* study that concluded "meal delivery sales reached new heights" thanks to pandemic-related restrictions. FAC ¶ 119 n.12. Consumers therefore understand Google's role as an information indexer, rather than a delivery provider. Plaintiffs cannot plausibly allege that online food shoppers will be confused by Google's placement of Plaintiffs' restaurant names in plain font at the top of its food ordering webpages or in proximity to the "Order Online" button in response to a consumer's Google search for the restaurant's name. *See Network Automation*, 638 F.3d at 1152; *Toyota*, 610 F.3d at 1178.

Plaintiffs' other attempts to allege consumer confusion regarding sponsorship run headlong into the nominative fair use doctrine. Plaintiffs fault Google for failing to disclose "to the searching consumer that the 'Order Online' button is not sponsored or approved by the restaurant." FAC ¶ 62. But nominative fair use permits truthful use of a mark, "even if the speaker fails to expressly disavow association with the trademark holder." *Toyota*, 610 F.3d at

1882087

1177. The law is clear in the Ninth Circuit that "[s]peakers are under no obligation to provide a disclaimer as a condition for engaging in truthful, non-misleading speech." *Id*. Likewise, Plaintiffs nowhere allege that Google published any affirmative statement of sponsorship without their knowledge or consent. *See Cairns*, 292 F.3d at 1154–55 (third *New Kids* factor satisfied in part due to lack of claim that the products were "sponsored or endorsed" by plaintiff).[10] And although Plaintiffs allege that Google's "Order Online" button and Storefront "intercepted over 1,000 delivery and take-out orders from customers . . . many of whom would have otherwise ordered from Plaintiffs' restaurants directly," FAC ¶ 99, they offer no factual basis for that bald assertion. But even so, Plaintiffs' right to their tradenames and trademark "does not entitle them to control their [customers'] use of their own money"—*i.e.*, whether they order directly from Plaintiffs' restaurants or through a Delivery Provider. *New Kids*, 971 F.2d at 309.

Accordingly, Google's alleged use satisfies all of the *New Kids* factors. The Court should therefore dismiss the Amended Complaint in its entirety.

## B.    Plaintiffs lack standing under the Lanham Act.

Plaintiffs' claims for false advertising and false association under the Lanham Act fail for the additional reason that Plaintiffs lack standing to assert them. To state a claim for false advertising, a plaintiff must plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140.[11] But the Lanham Act does not allow "all factually injured plaintiffs to recover." *Id.* at 129. Rather, the "zone-of-interests" test and proximate-cause requirement articulated by the Supreme Court in *Lexmark* set forth "the relevant limits on who may sue." *Id*. at 134. Because Plaintiffs'

---

[10] To the contrary, after Plaintiffs claimed the Business Profile for Lime Fresh Dadeland and indicated a preferred food ordering and delivery channel, Google so noted on its Landing Page. *See* Hucek Decl. Ex. 5.

[11] Although the Ninth Circuit has yet to weigh in on the question, a number of federal courts, including one court in this District, have applied *Lexmark*'s standing analysis to false association claims as well. *See, e.g.*, *LegalForce, Inc. v. LegalZoom.com, Inc.*, 2019 WL 2088416, at *4 (N.D. Cal. May 13, 2019) (assuming without deciding that *Lexmark* applied to plaintiff's false association claim); *578539 B.C., Ltd. v. Kortz*, 2014 WL 12572679, at *6 n.54 (C.D. Cal. Oct. 16, 2014) (noting that courts have "assumed" that *Lexmark* "applies equally to [] false association claims"); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710–12 (4th Cir. 2016) (applying *Lexmark* to both false advertising and false association claims).

1882087

allegations fail to satisfy either inquiry, their Lanham Act claims must be dismissed.

**1.     Plaintiffs have alleged no injury to their reputation or sales.**

A false advertising claim under the Lanham Act extends only to a plaintiff whose interests fall within "the zone of interests" protected by the statute—*i.e.*, one who sufficiently alleges injury "to a commercial interest in reputation or sales." *Id.* at 129, 131-32. Hollow allegations of competitive harm or threadbare recitals of reputational damage are insufficient. *See Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *7 (D. Ariz. Jan. 16, 2020). Rather, the plaintiff must allege *facts* showing actual injury. Plaintiffs have not done so.

*First*, the "paradigmatic" injury from false advertising is "diversion of sales to a direct competitor." *Lexmark*, 572 U.S. at 138. Therefore, "when a plaintiff competes directly with a defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022). Here, Plaintiffs are entitled to no such presumption. Although Plaintiffs allege that Google's Storefront "sells Plaintiffs' . . . own menu items" and "competes for the same consumers," FAC ¶¶ 79–80, those statements are not only unsupported by any well-pleaded allegations, but they are also contradicted by other allegations in the Amended Complaint. *See, e.g.*, *Salvati v. BAC Home Loans Servicing, LP*, 2011 WL 13217977, at *2 (C.D. Cal. Jan. 18, 2011) (finding claim insufficiently pled due to "contradictory allegations").

For example, Plaintiffs allege that when a customer places an order within the Storefront, "Google **sends** the order" to a Delivery Provider, and the Delivery Provider "***routes*** the order to the restaurant just as if the order originated from the receiving Delivery Provider's proprietary platform." *Id.* ¶ 72. Plaintiffs allege no facts showing that Google sells anything at all, much less products that compete with Plaintiffs. *See Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019) (parties who "do not offer the same products

1882087

or services . . . are not in competition" under the Lanham Act).[12] Therefore, the alleged misrepresentation—Google's use of Plaintiffs' tradenames—does not "give rise to a presumed commercial injury." *ThermoLife Int'l,* 2022 WL 612669, at *2.

**Second**, Plaintiffs have alleged nothing "more than a conclusory claim of commercial injury." *ThermoLife,* 2020 WL 248164, at *7.  Plaintiffs contend that Google's "Order Online" button and Storefront "intercepted over 1,000 delivery and take-out orders." FAC ¶ 99. But Plaintiffs never claim that they actually lost sales; the alleged orders were routed to Plaintiffs via a Delivery Provider with whom Plaintiffs have a contractual relationship. *Id.* ¶¶ 8, 71. Plaintiffs allegedly prefer to receive orders directly through the Lime Fresh website so as to avoid Delivery Provider fees, which they negotiated and agreed to in order to extend their commercial reach. That is not the type of commercial injury that gives rise to Lanham Act standing.[13]

**Finally**, Plaintiffs have alleged no facts showing that they have suffered cognizable damage to their reputation. *Lexmark*, 572 U.S. at 137–38. Again, Plaintiffs must allege *facts* showing reputational injury; conclusory allegations are insufficient. *See Charlotte's Web*, 2020 WL 6891876, at *1. Here, Plaintiffs allege that Google's use of Plaintiffs' tradenames damages their reputations "by associating Plaintiffs [with] websites and Delivery Providers over whom they do not exert control." FAC ¶ 112; *see also id.* ¶ 101. But that allegation ignores that it is Plaintiffs—not Google—who have chosen to associate their restaurants and website with Delivery Providers. *See* Hucek Decl., Ex. 1 (Plaintiffs' website identifying multiple Delivery Providers as "Delivery Options"). Plaintiffs' alleged reputational injury is nothing more than "a generalized and nebulous claim." *ThermoLife*, 2020 WL 248164, at *7. Accordingly, Plaintiffs have failed to allege any injury sufficient to confer standing.

---

[12] To the contrary, Plaintiffs explicitly allege that Delivery Providers—not Google—"are the restaurant's competitors." FAC ¶¶ 9; *see also* ¶¶ 33, 85. And even this allegation is suspect, as the Delivery Providers here are Plaintiffs' own agents.

[13] Nor can Google be liable for conduct that causes Plaintiffs to honor their contractual obligations. *See* Restatement (Second) of Torts § 892A ("One who effectively consents to conduct of another . . . cannot recover in an action of tort for the conduct or for harm resulting from it.").

1882087

**2.      Plaintiffs cannot satisfy the proximate-cause requirement.**

Plaintiffs likewise fail the proximate-cause requirement. That requirement demands a plaintiff "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

Plaintiffs have alleged no injury resulting from Google's alleged use of their tradenames. At most, Plaintiffs assert in conclusory fashion that absent Google's conduct, many consumers "would have otherwise ordered from Plaintiffs' restaurants directly" via the Lime Fresh website, and that Plaintiffs "would have avoided the fees charged by the Delivery Providers to whom Google routed" the orders. FAC ¶ 98. But Plaintiffs' other allegations contradict those assertions. Plaintiffs allege that even for orders placed on Lime Fresh's own website, Plaintiffs pay Delivery Provider fees to fulfill them. *See id.* ¶ 38 n.5. And because the Lime Fresh website directly links to and invites customers to order from multiple Delivery Providers, a customer who visits the Lime Fresh website and, for example, clicks the Postmates icon next to "Delivery options" will be routed to Postmates's platform and may place their Lime Fresh order from there. *See* Hucek Decl., Ex. 1. Plaintiffs never allege that orders placed in this manner incur lower Delivery Provider Fees than orders made through Google's Storefront. Plaintiffs' omission on this point is significant because it contradicts their claim that had Google not diverted customers away from the Lime Fresh website, Plaintiffs would have avoided Delivery Provider fees. *Id.* ¶ 98.

Plaintiffs have also pleaded no facts showing that Google's alleged misrepresentation resulted in reputational injury. They allege only that Google's Landing Page "dilutes and damages" Plaintiffs' reputation "by associating Plaintiffs [with] websites and Delivery Providers over whom they do not exert control." *Id.* ¶ 112. "This is ipse dixit and not the pleading of facts." *Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021). Moreover, it is Plaintiffs themselves who have chosen to associate (including on their own websites) with Delivery Providers with whom they have contracted for delivery services. Google has done nothing more than provide consumers with this same information when they search for

1882087

1  information about the restaurant, and the Amended Complaint contains no well-pleaded facts that

2  come close to establishing any deception that affected consumers' economic decisions.

3       Finally, any alleged harm to Plaintiffs from Google's alleged misrepresentation is "too

4  remote" to satisfy the proximate-cause requirement. *Lexmark*, 572 U.S at 133. Plaintiffs contend

5  that Google's unauthorized use of Plaintiffs' tradenames "is a false representation" concerning

6  *Google's* "Online Order" button and *Google's* food ordering pages. FAC ¶ 149. But even

7  assuming Plaintiffs adequately alleged that they lost sales or had to pay additional Delivery

8  Provider fees (they have not), "the causal chain linking [Plaintiffs'] injuries to consumer

9  confusion" is non-existent. *Lexmark*, 527 U.S. at 139. Plaintiffs allege that they compete with

10  multiple Delivery Providers. FAC ¶¶ 9, 85. And the Amended Complaint identifies "several

11  intervening steps—and third-party decisions—that may have caused Plaintiffs' alleged injury."

12  *Alfasigma USA, Inc. v. First Databank, Inc.*, 2022 WL 899848, at *9 (N.D. Cal. Mar. 28, 2022).

13  For example, a customer's recall of "a restaurant's website, phone number, or address" may vary.

14  FAC ¶ 2. Customers make their own decisions about how to place their orders. *Id.* ¶ 37. Some

15  customers may value loyalty rewards and promotional programs more than others. *Id.* ¶ 36. Other

16  customers may prefer to order through a particular Delivery Provider with whom they have a

17  monthly subscription. Such customer independence leads to "discontinuity between the alleged

18  false advertising and Plaintiff's asserted injury, and bridging this gap to determine the true cause

19  of Plaintiff's injury would require speculative proceedings or intricate, uncertain inquiries."

20  *Alfasigma*, 2022 WL 899848, at *11. Moreover, because "there could be any number of

21  intervening reasons for why Plaintiffs' sales decreased," an "artificial and attenuated link between

22  [Google's] purported false advertising and [Plaintiffs'] harm, inter alia, defies the reality of

23  business." *ThermoLife*, 2020 WL 248164, at *9. Accordingly, Plaintiffs have failed to establish

24  Lanham Act standing, and their claims for false advertising and false association should be

25  dismissed.

26      **C.**    **Plaintiffs' false advertising claim fails.**

27      Plaintiffs' false advertising claim must be dismissed for three additional reasons.

28

***First***, Plaintiffs' "false advertising claim fails because it is essentially a false association claim in disguise." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017).[14] Courts have recognized that plaintiffs are often "tempted to frame a false association claim as a false advertising claim to ease their evidentiary burden." *Id*. But where, as here, the plaintiff alleges that the defendant "falsely represented that it does business with [plaintiff]," the claim "is really a false association claim under the Lanham Act" and is subject to dismissal. *Welk Resort Grp.*, 2019 WL 1242446, at *15. Such is the case here. Plaintiffs allege that Google deceives consumers by leading them to believe that their restaurants are associated with Google's Landing Page or Storefront. That claim has nothing to do with false advertising; it represents an (infirm) effort to allege false association under the Lanham Act.

***Second***, and relatedly, Plaintiffs' false advertising claim merely duplicates their trademark infringement claim. Because "[t]he mere use of an allegedly infringing trademark" is insufficient to support a false advertising claim, such a claim "fails where it is merely duplicative of an infringement claim." *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *12 (N.D. Cal. July 8, 2020) (cleaned up); *see also Lasoff v. Amazon.com, Inc.*, 741 Fed. App'x 400, 402 (9th Cir. 2018) (affirming dismissal of false advertising claim that duplicated infringement claim). That holding applies here. Plaintiffs nowhere claim that Google has made a false statement about Plaintiffs' products or services; they allege merely that Google placed their tradenames atop webpages that provide information about their restaurants.

***Third***, Plaintiffs' false advertising claim fails for insufficient pleading. Plaintiffs must sufficiently plead, among other things, "a false statement of fact by the defendant in a commercial advertisement about its own or another's product." *Wells Fargo, Inc.*, 758 F.3d at 1071. In other words, Plaintiffs must allege "that Google made a false statement of fact about its own or another's product." *Gearsource*, 2020 WL 3833258, at *12. Because the claim sounds in fraud,

---

[14] Plaintiffs have asserted both theories of liability under Section 43(a) of the Lanham Act: false association under 15 U.S.C.§ 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B). Plaintiffs' false association claim fails for the reasons stated above—the nominative fair use doctrine covers the alleged conduct, and Plaintiffs lack standing to assert it.

1   Rule 9(b)'s heightened pleading standard applies. *See Ely Holdings*, 2019 WL 3779197, at *4.

2       A statement can be false if it is "literally false, either on its face or by necessary

3   implication," or is "literally true but likely to mislead, confuse or deceive consumers." *Clorox*

4   *Company v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635 (N.D. Cal. 2019). An

5   impliedly false statement must be "specific and deceptive" to be actionable. *Ariix, LLC v.*

6   *NutriSystem Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Where, as here, the claim rests on a

7   statement that is allegedly "merely misleading in context," then the "evidentiary showing required

8   to sustain a Lanham [Act] claim is higher"; Plaintiffs must show "that the advertising actually

9   conveyed the implied message and thereby deceived a significant portion of the recipients."

10  *Genus Lifesciences v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 833 (N.D. Cal. 2019). To survive a

11  motion to dismiss under a "likely to mislead" theory, the "pleading must plausibly suggest a

12  likelihood to mislead." *Clorox*, 398 F. Supp. 3d at 636; *see also Ariix*, 985 F.3d at 1121.

13      The Amended Complaint nowhere alleges that Google has made any expressly false

14  statement of fact. The "Order Online" button does just what it says: it directs consumers to

15  avenues through which they can order food from the restaurants they were searching for online.

16  With no false statement to point to, Plaintiffs contend that Google's "deceptive use of Plaintiffs'

17  [] tradenames" is an impliedly "false representation" regarding the "nature, characteristics, and

18  qualities of: (i) Google's button; (ii) Google's webpages; and (iii) the goods, services, and

19  commercial activities made available within the websites." FAC ¶ 149; *see also id.* ¶ 10 (accusing

20  Google of "misrepresenting the nature and characteristics of its own commercial activities").

21  These vague and conclusory allegations identify no "specific and deceptive" statement. *Ariix*, 985

22  F.3d at 1121. Plaintiffs fail to allege ***what*** the specific misrepresentations about Google's

23  "button," "webpages" and "commercial activities" are, ***how*** those statements are inaccurate, and

24  ***how*** they confuse, deceive, or mislead consumers. That failure dooms their false advertising

25  claim. *See Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080, at *9 (N.D. Cal. Dec. 9,

26  2021) (dismissing claim for failure to plead the "who, what, [] when" or "how" with

27  particularity).

28

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:22-CV-01462-VC

1882087

Plaintiffs also fail to plead that Google made any (supposedly) false statement in a "commercial advertisement." *Wells Fargo*, 758 F.3d at 1071. The Ninth Circuit defines a "commercial advertisement" as, among other things, commercial speech made "for the purpose of influencing consumers to buy ***defendant's*** goods or services." *Ariix*, 985 F.3d at 1120. That element is critical: the Lanham Act "guards against" transactions in which the defendant "mischaracteriz[es] goods and services to divert sales *to himself*." *Maffick LLC*, 2021 WL 1893074 at *3; *see also Alfasigma*, 525 F. Supp. 3d 1088, 1099–1101 (N.D. Cal. 2021) (dismissing false advertising claim for lack of allegation that defendant's statement promoted *defendant's* products or services, as opposed to others'). Plaintiffs fail to plead this factor. They nowhere allege that Google made the challenged statements to induce consumers to buy *Google's* goods or services.

Plaintiffs also fail sufficiently to allege that the supposedly false "statement actually deceived or has the tendency to deceive a substantial segment of its audience." *Wells Fargo*, 758 F.3d at 1071. The Amended Complaint includes no specific allegations regarding deceived customers. Rather, it pleads a commonplace online transaction in which sophisticated online consumers use Google to search for a restaurant and identify various options through which they can order that restaurant's food. There is nothing deceptive about that online interaction.

***Finally***, Plaintiffs fail to plead that the (non-existent) false statement harmed them, "either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products." *Wells Fargo*, 758 F.3d at 1071. Plaintiffs nowhere assert that Google has directly diverted sales from their Lime Fresh restaurants to itself. And their allegations regarding dilution of goodwill are conclusory. *See* FAC ¶¶ 1, 12, 25, 101. Plaintiffs never explain how alerting consumers to the fact that they can order their food from Plaintiffs' chosen Delivery Providers damages the goodwill associated with their brand.[15]

---

[15] The allegation becomes even less plausible given that, as Plaintiffs allege, restaurants who partner with Delivery Providers allow the providers to use the restaurants' marks and tradenames in connection with online services and marketing activities. *See* FAC Ex. B, ECF 41-2 at ¶¶ 7.1, 7.3; *see also* Hucek Decl. Ex. 9 at ¶ 5.3.1 (DoorDash terms and conditions).

1

### D.	Plaintiffs fail to allege a counterfeiting claim.

2

Counterfeiting is "the hard core or first degree of trademark infringement." *Arcona, Inc. v.*

3

*Farmacy Beauty, LLC*, 976 F.3d 1079 (9th Cir. 2020). It is typically asserted where the trademark

4

holder alleges that the defendant applied a mark to the defendant's own products and passed them

5

off as those of the trademark owner. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207,

6

242 (S.D.N.Y. 2012) (Counterfeiting "seeks to trick the consumer into believing he or she is

7

getting the genuine article, rather than a colorable imitation"). "When an original mark is attached

8

to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just

9

as it would if an imitation of the mark were attached." *Westinghouse Elec. Corp. v. Gen. Cir.*

10

*Breaker & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997).

11

But counterfeiting requires more than duplicating a plaintiff's mark: "a counterfeit claim

12

requires a showing of likelihood of confusion under Section 1114." *Arcona, Inc.*, 976 F.3d at

13

1079 (9th Cir. 2020). To that end, Plaintiffs must allege that "the mark in question be (1) a non-

14

genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark

15

was registered for use on ***the same goods to which the infringer applied the mark***." *Louis*

16

*Vuitton*, 658 F.3d at 945–46. "Counterfeit products must be ***identical*** to the product listed in the

17

registered trademark." *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 Fed. App'x. 393, 396

18

(9th Cir. 2018).

19

Plaintiffs make no such claim here. Rather, Plaintiffs allege that Google uses a counterfeit

20

version of their service mark for LIME FRESH MEXICAN GRILL "in connection with its

21

[Order Online] button and competing, unauthorized, webpages for the purpose of selling

22

unauthorized, unlicensed, products and services to consumers." FAC ¶ 138. These conclusory and

23

nearly meaningless allegations fail to state a claim.

24

To begin, Plaintiffs nowhere allege that Google has used Plaintiffs' mark on services

25

identical to those "listed in the registered trademark." *Kaloud, Inc.*, 741 Fed. App'x at 396; *see*

26

*also Louis Vuitton*, 658 F.3d at 945-46. Plaintiffs' mark is registered for "Restaurant services"

27

and "Take-out restaurant services." FAC, Ex. C. Google is not in the restaurant or take-out

28

1882087

business, and Plaintiffs allege that Google uses their mark in connection with a different service altogether: a web search index offering. When the alleged counterfeiter is "in a wholly different industry" than the trademark holder, consumer confusion may not arise—even where the complainant's and alleged infringer's marks are identical. *Arcona*, 976 F.3d at 1080.

The Court should also disregard Plaintiffs' claim that Google "sells Plaintiffs' . . . own menu items," a statement contradicted by other allegations in the Amended Complaint. FAC ¶¶ 73, 80. Plaintiffs concede that when a consumer initiates an order using the "Order Online" button, the order is sent to the restaurant for fulfillment—not Google. *Id.* ¶ 72.[16] Plaintiffs' failure to allege Google uses their mark on identical services is fatal to their counterfeiting claim. *See Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, 2016 WL 7479317, at *7 (C.D. Cal. Dec. 29, 2016) ("To find that anything less than an 'identical' or 'substantially indistinguishable' product can give rise to a counterfeit claim would risk rendering all trademark infringement claims. . . counterfeiting claims. . .").

Even assuming that Plaintiffs could state a counterfeiting claim for use of their mark in connection with entirely different services, Plaintiffs have failed to allege any well-pleaded facts showing likelihood of confusion. Likelihood of confusion is determined from the perspective of the "reasonably prudent consumer"—here, one "accustomed to shopping online." *Multi Time Machine*, 804 F.3d at 933; *see also* section IV.A, *supra*. When evaluating likelihood of confusion in the context of counterfeiting, the "court should not myopically focus on only the alleged counterfeit marks to the exclusion of the entire product or even common sense." *Arcona*, 976 F.3d at 1080. Rather, the Court "must review the product as a whole in determining whether an allegedly counterfeit product will likely cause confusion." *Id.*

---

[16] Even if the Court accepts that Google "sells Plaintiffs' . . . own menu items," FAC ¶ 80, the resale of a genuine product does not in itself constitute trademark infringement. *See Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*, 707 F.2d 1054, 1058 (9th Cir. 1983). And a producer's right to control its trademarked product's distribution "does not extend beyond the first sale of the product." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F. 3d 1073, 1074 (9th Cir. 1995). In any event, Plaintiffs assert a service mark, not a product mark. A service mark is used "to identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127.

1882087

1    Plaintiffs allege no well-pleaded facts showing likelihood of confusion. They claim that

2    Google's use of restaurants' names on its webpages will confuse consumers about the webpages'

3    origin and sponsorship. FAC ¶¶ 149–50. But allegations that a defendant's "counterfeit marks

4    misrepresent [the] designation of origin" and are therefore "deceptive, confusing, and [] likely to

5    cause mistake on the part of [the] consuming public," are mere "legal conclusions" that are "not

6    entitled to be assumed true." *Carter*, 2018 WL 3067985, at * 3. In addition, Plaintiffs allege that

7    Google uses their service mark to accurately identify ***Plaintiffs' own services*** in Google's search

8    results. The Ninth Circuit has held as a matter of law that a defendant is not liable for using a

9    trademark in Internet search results where the products at issue are clearly labeled. *See Multi*

10   *Time Machine*, 804 F.3d at 938. By Plaintiffs' own admission, Google's webpages meet that

11   standard. *See, e.g.*, FAC Figs. 5, 10.

12   That Google may also identify Delivery Providers available to fulfill orders from

13   Plaintiffs' restaurants does not make confusion likely. *Shell Trademark Mgmt. BV v. Canadian*

14   *Am. Oil Co., Inc.* is instructive. 2002 WL 32104586, at *4 (N.D. Cal. May 21, 2002). There, the

15   Court found that the defendant's display of Shell's name, logo, and trade dress did not create

16   initial interest confusion merely because customers could also buy other brands of gas from the

17   defendant. *Id.* The Court noted that "diversion to a web site that offered both the trademark

18   owner's products and the competitors on the same home page" would likewise be lawful. *Id.* Put

19   another way, "[d]iverting consumers through deceit and misrepresentation is not allowed, but

20   diverting consumers by providing additional choices is permitted." Jennifer E. Rothman, *Initial*

21   *Interest Confusion: Standing at the Crossroads of Trademark Law*, 27 Cardozo L. Rev. 105, 124

22   (2005).[17] Accordingly, Plaintiffs have not stated a claim for counterfeiting.

23

24

25

---

26   [17] Plaintiffs' contention that Google's use of their service mark results in the provision of
     "unauthorized, unlicensed" takeout and delivery services is without merit. *Id.* at ¶ 138. Plaintiffs
27   concede that orders placed using the "Order Online" button are routed to ***Plaintiffs*** via a Delivery
     Provider with whom they have a contractual relationship. *Id.* ¶¶ 8, 71.
28

# V.    CONCLUSION

Plaintiffs' Amended Complaint should be dismissed in its entirety. Because its failures cannot be cured by further amendment, Google respectfully requests that dismissal be entered with prejudice.

Dated:  August 15, 2022                         KEKER, VAN NEST & PETERS LLP

By:   */s/ Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MICHELLE YBARRA
CODY S. HARRIS
KRISTIN HUCEK
GREGORY WASHINGTON
LUKE APFELD

Attorneys for Defendant
GOOGLE LLC

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:22-CV-01462-VC

1882087