KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MICHELLE YBARRA - # 260697
mybarra@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
GREGORY WASHINGTON - # 318796
gwashington@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEFT FIELD HOLDINGS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 3:22-CV-01462-VC <br><br> **GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Date:      October 27, 2022 <br> Time:      9:30 a.m. <br> Court:     4; 17th Floor <br> Judge:    Hon. Vince Chhabria <br><br> Date Filed: March 8, 2022 <br><br> Trial Date: Not Yet Set |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................1

    A. The nominative fair use doctrine defeats all of Plaintiffs' claims. ..........................1

    B. Plaintiffs lack standing under the Lanham Act.........................................................6

    C. Plaintiffs' false advertising claim fails. ...................................................................8

    D. Plaintiffs fail to allege a counterfeiting claim. .........................................................9

III. CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adobe Systems Inc. v. A & S. Electrics Inc.*,
153 F. Supp. 3d 1136 (N.D. Cal. 2015) ..................................................................................5

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
896 F.3d 437 (D.C. Cir. 2018) ...............................................................................................2

*Applied Underwriters, Inc. v. Lichtenegger*,
913 F.3d 884 (9th Cir. 2019) .................................................................................................3

*Arcona, Inc. v. Farmacy Beauty, LLC*,
976 F.3d 1074 (9th Cir. 2020) .............................................................................................10

*BMW of N. Am., LLC v. S.F. Express Corp.*,
2020 WL 10486758 (C.D. Cal. Aug. 6, 2020).......................................................................4

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ...............................................................................................2

*Carter v. Oath Holdings Inc.*,
2018 WL 5819458 (N.D. Cal. Nov. 5, 2018) ........................................................................9

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
2021 WL 5848080 (N.D. Cal. Dec. 9, 2021).........................................................................9

*Craigslist v. DealerCMO, Inc.*,
2017 WL 6334142 (N.D. Cal. Apr. 11, 2017) .......................................................................2

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
256 F. Supp. 3d 1099 (S.D. Cal. 2017)..................................................................................3

*Gorski v. The Gymboree Corp.*,
2014 WL 3533324 (N.D. Cal. Jul. 16, 2014).........................................................................5

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
823 F.3d 153 (2d Cir. 2016)...................................................................................................2

*Jones v. Regents of Univ. of Cal.*,
2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) .......................................................................8

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ...............................................................................................10

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) ........................................................................................ *passim*

*Pasadena Tournament of Roses Ass'n v. City of Pasadena*,
   2021 WL 3553499 (C.D. Cal. July 12, 2021) ..................................................................... 3

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
   371 F. Supp. 3d 652 (N.D. Cal. 2019) ............................................................................... 3

*Rousselot B.V. v. St. Paul Brands, Inc.*,
   2019 WL 6825763 (C.D. Cal. Jul. 24, 2019) ..................................................................... 5

*Slep-Tone Ent. Corp. v. Shenanigans Lounge*,
   2013 WL 1768444 (D. Or. Feb. 22, 2013) ......................................................................... 4

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
   919 F. Supp. 2d 1112 (D. Nev. 2013) ............................................................................ 2, 3

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ................................................................................ 1, 2, 4, 5

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ............................................................................................. 7

*Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*,
   2019 WL 1242446 (S.D. Cal. Mar. 18, 2019) ................................................................ 7, 8

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
   758 F.3d 1069 (9th Cir. 2014) ........................................................................................... 8

**Federal Statutes**

Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1) ......................................................... 1, 6, 8, 9

**Rules**

Fed. R. Civ. P. 9 .................................................................................................................. 9

Fed. R. Civ. P. 12 ................................................................................................................ 2

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition, § 23:11 (5th ed.) ............................ 2

I.     **INTRODUCTION**[1]

Rather than offering a substantive rebuttal to Google's Motion to Dismiss, Plaintiffs' Opposition serves only to highlight why dismissal is appropriate. Plaintiffs' primary argument—that it's too early to dismiss their defective claims—is without merit. Contrary to Plaintiffs' argument, nominative fair use is not an "affirmative defense" in the Ninth Circuit. *See* Opp. at 1, 4–6. Rather, as the Ninth Circuit has held, it would be "error" for a "district court [to] treat[] nominative fair use as an affirmative defense." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010). Accordingly, district courts in the Ninth Circuit regularly decide nominative fair use on the pleadings. Here, Plaintiffs' First Amended Complaint ("FAC") alleges that Google uses Plaintiffs' tradenames and service mark to identify Plaintiffs' own food offerings and delivery options. Google's use therefore "lies outside the strictures of trademark law," and is protected under the doctrine of nominative fair use. *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). The Court can and should decide that issue on the pleadings, which disposes of the FAC in its entirety.

But even if the Court were to find nominative fair use inapplicable at this stage, the FAC still fails. Plaintiffs offer no sound rebuttal to Google's arguments that they lack standing to assert their Lanham Act claims and that they have failed to adequately plead their false advertising and counterfeiting claims. Plaintiffs' claims should be dismissed with prejudice.

II.    **ARGUMENT**

    A.    **The nominative fair use doctrine defeats all of Plaintiffs' claims.**

Google's Motion demonstrated why nominative fair use defeats all of Plaintiffs' claims. *See* Mot. at 10–13. Reflecting "serious First Amendment concerns," nominative fair use protects

---

[1] In all quotations herein, all emphases are added and internal punctuation, alterations, and citations are omitted, unless otherwise noted.

the "truthful use of a mark, even if the speaker fails to expressly disavow association with the trademark holder." *Toyota*, 610 F.3d at 1176–77. Google's alleged conduct meets the governing three-part *New Kids* test for nominative fair use: (1) Plaintiffs' restaurants are not readily identifiable without references to their tradenames or service mark, (2) Google references only Plaintiffs' restaurants' names, not any aspect of their brand identity, and (3) Google has done nothing to falsely suggest sponsorship to a "reasonably prudent consumer accustomed to shopping online." *See* Mot. at 10–13 (quoting *Toyota*, 610 F.3d at 1176).

Plaintiffs rebut none of this. Instead, they repeatedly assert that nominative fair use is an "affirmative defense" that the Court cannot decide on a Rule 12 motion. *See* Opp. at 1, 4–6. That is wrong. The Ninth Circuit has held that it is "error" to treat nominative fair use as an "affirmative defense." *Toyota*, 610 F.3d at 1182. District courts in this Circuit have recognized this rule, *see Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1124 (D. Nev. 2013) (nominative fair use is not an affirmative defense, but instead "names a use of the mark that is not likely to confuse"), as have other Circuits addressing Ninth Circuit law, *see Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 166 (2d Cir. 2016) ("In the Ninth Circuit, nominative fair use is not an affirmative defense."); *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 457 (D.C. Cir. 2018) (same). Legal treatises are in accord. *See* 4 McCarthy on Trademarks and Unfair Competition, § 23:11 (5th ed.) ("In the Ninth Circuit . . . , nominative fair use is not an affirmative defense.").[2]

---

[2] Plaintiffs' misconception rests on conflating the distinct doctrines of classic and nominative fair use. *See* Opp. at 4. Plaintiffs cite this Court's decision in *Craigslist v. DealerCMO, Inc.*, to argue that a "fair use defense . . . is an affirmative defense that can only be raised at the pleading stage if it is obvious from the face of the complaint." 2017 WL 6334142, at *2 (N.D. Cal. Apr. 11, 2017) (Chhabria, J.). But *Craigslist* was a *classic* fair use case; nominative fair use was nowhere mentioned. The two doctrines are distinct: the former applies when the mark is used "to describe the defendant's *own* product," while the latter applies when the mark is used "to describe the *plaintiff's* product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). Different legal tests govern the application of each doctrine. *Id.*

Indeed, courts in this Circuit regularly dismiss complaints on the pleadings on nominative fair use grounds, including in cases involving allegations similar to those asserted here. *See* Mot. at 10 n.7 (listing cases). As one district court put it, "if the pleadings fail to allege a mark use beyond nominative fair use," then the "plaintiff has failed to state a claim for which relief may be granted." *Stevo*, 919 F. Supp. 2d at 1124; *see also Pasadena Tournament of Roses Ass'n v. City of Pasadena*, 2021 WL 3553499, at *5–6 (C.D. Cal. July 12, 2021) (dismissing claims on nominative fair use grounds "because the entirety of the Instagram post at issue is before the Court and its contents are not disputed"). In *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, the court rejected the argument Plaintiffs advance here, noting that "[d]efendants offer a reasoned application of each prong of the nominative fair use inquiry . . . [a]nd plaintiff's sole argument against nominative fair use is that it should not appl[y] as a matter of law on a motion to dismiss." 256 F. Supp. 3d 1099, 1112-13 (S.D. Cal. 2017) (dismissing trademark cause of action on nominative fair use grounds).[3]

Having first relied on the mistaken argument that nominative fair use is an "affirmative defense" that "cannot be invoked" on the pleadings, *see* Opp. at 1, Plaintiffs next contend that the doctrine fails to apply to this case at all because Plaintiffs "do not complain that Google uses their mark for comparison, criticism, point of reference, or a similar purpose." *Id.* at 4. That argument ignores the FAC's own allegations. Just as in *New Kids*, Google's alleged use of Plaintiffs' tradenames and service mark is nominative precisely because "the only word reasonably available to describe a particular thing"—here, the name of Plaintiffs' fast casual Mexican restaurant—"is pressed into service." 971 F.2d at 308.

---

[3] Plaintiffs' efforts to distinguish *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019), and *PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652 (N.D. Cal. 2019), also fail. As in those cases, here nominative fair use is apparent from the face of the FAC and the relevant documents are properly subject to judicial notice.

To the extent Plaintiffs suggest that the doctrine applies only when a defendant uses a plaintiff's mark to criticize the plaintiff's goods or services, that is incorrect. The defendant in *Toyota* was a car broker who used the Lexus mark to sell actual Lexus cars to consumers through authorized dealers. 610 F.3d at 1174. The alleged conduct here is analogous. Indeed, one can easily replace the parties' names and alleged conduct to see why the doctrine applies here:

> When customers purchase a [Lime Fresh taco] through [Google's webpages], they receive a genuine [Lime Fresh taco] sold by an authorized [Delivery Provider], and a portion of the proceeds ends up in [Lime Fresh's] bank account. [Lime Fresh] doesn't claim the business of [online food ordering] is illegal or that it has contracted with its [Delivery Providers] to prohibit selling through [a website]. Instead, [Lime Fresh] is using this trademark lawsuit to make it more difficult for consumers to use [Google's webpages] to buy a [Lime Fresh taco].

*Id.* at 1175. In *Toyota*, when the brokers "say Lexus, they mean Lexus." *Id.* Here, when Google says Lime Fresh, it means Lime Fresh.[4]

Plaintiffs' substantive response to Google's argument under the governing *New Kids* test is confined to a single footnote. *See* Opp. at 5 n.10. There, they argue that "the *New Kids* test need not be applied here," which is wrong, and then conclude that the FAC survives that test, *id.*, which is also wrong. Plaintiffs make no effort to discuss each *New Kids* factor. Rather, in a single sentence, Plaintiffs assert that the second and third *New Kids* factors are not met because "Plaintiffs have adequately alleged that Google uses Plaintiffs' trademark more than reasonably necessary and in a way that suggests sponsorship or endorsement by Plaintiffs." *Id.* This bare and conclusory assertion identifies no well-pleaded factual allegations demonstrating **how** Google has used the Plaintiffs' tradenames or service mark more than necessary or **how** Google has used

---

[4] Neither of the cases Plaintiffs cite demands a different result. Both cases involved allegations that the defendant was selling actual counterfeit goods while using the plaintiff's trademark. *See BMW of N. Am., LLC v. S.F. Express Corp.*, 2020 WL 10486758, at *4 (C.D. Cal. Aug. 6, 2020) (declining to hold that defendant's alleged use of plaintiffs' BMW trademarks on counterfeit BMW emblems sold on eBay constituted nominative fair use); *Slep-Tone Ent. Corp. v. Shenanigans Lounge*, 2013 WL 1768444, at *3 (D. Or. Feb. 22, 2013) (holding that nominative fair use did not bar plaintiff's claim that defendants were using plaintiff's trademark on counterfeit karaoke accompaniment tracks). In both cases, plaintiff's trademark was not being used to describe the plaintiff's own product, but rather defendant's counterfeit version thereof.

the asserted tradenames and service mark in a way that suggests sponsorship or endorsement by Plaintiffs. To the contrary, Plaintiffs concede that Google in no way used Lime Fresh's logo, color scheme, or any other aspects of its branding that could plausibly confuse reasonably prudent internet shoppers. *See* FAC ¶¶ 66, 103, Figs. 5, 10. In fact, Plaintiffs make no effort to explain how the FAC alleges that "reasonable, prudent and experienced internet consumers" who "use the internet for shopping [and] are generally quite sophisticated about such matters" could plausibly be misled by Google's order online button or the use of a restaurant's name atop a webpage regarding that restaurant's delivery options. *Toyota*, 610 F.3d at 1178-79. Plaintiffs fail to mention that standard, much less explain how the FAC meets it.[5]

In its footnote response to the *New Kids* test, rather than direct the Court to any well-pleaded facts supporting its conclusory assertions, Plaintiffs cite to three inapposite cases. *Rousselot B.V. v. St. Paul Brands, Inc.*, 2019 WL 6825763 (C.D. Cal. Jul. 24, 2019), involved allegations that defendants purchased plaintiff's product and repackaged it as defendant's own while still using plaintiff's mark. Nothing of the sort is alleged here. In *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *6 (N.D. Cal. Jul. 16, 2014), Gymboree sold its own t-shirts displaying the plaintiff's distinctive copyrighted slogan, and the plaintiff alleged facts showing actual consumer confusion. And *Adobe Systems Inc. v. A & S. Electrics Inc.*, 153 F. Supp. 3d 1136, 1143 (N.D. Cal. 2015), concerned the sale of allegedly counterfeit versions of plaintiff's software bearing plaintiff's trademark. None of these cases is remotely analogous to what Plaintiffs allege here: a Google web search page listing accurate information about a searched-for restaurant—including links to the restaurant's own website and Delivery Providers with

---

[5] Plaintiffs' Opposition even misconstrues the FAC's meager allegations. Plaintiffs now claim that "Google brands its button . . . with Plaintiff's mark to mislead consumers." Opp. at 5. But the FAC nowhere alleges that the order online button is branded with Plaintiffs' mark. It simply says "Order Online." FAC ¶¶ 49, 55.

whom the restaurant itself has contracted for food-ordering and delivery services, which the restaurant itself advertises on its own website. *See* Hucek Decl., Ex. 1, at 3–8.

Because none of Plaintiffs' arguments save their FAC from dismissal on nominative fair use grounds, their FAC should be dismissed in its entirety.

### B. Plaintiffs lack standing under the Lanham Act.

Plaintiffs lack Lanham Act standing for their false advertising and association claims. As Google's Motion explained, the FAC offers no more than conclusory allegations of competitive harm and threadbare recitals of reputational damage insufficient to establish standing. *See* Mot. at 14 (citing *Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *7 (D. Ariz. Jan. 16, 2020)). Plaintiffs' Opposition does nothing to save these claims.

First, in response to Google's "zone-of-interests" argument, Plaintiffs' Opposition repeats the conclusory allegation that Google competes directly "for the same consumers as Plaintiffs," but never explains how Google's alleged diversion of sales to Plaintiffs' own Delivery Providers—with whom Plaintiffs concede they have contracted and whom Plaintiffs advertise on their own websites—is evidence of direct competition between Google and Plaintiffs. *See* Opp. at 12; *see also* FAC ¶ 29 ("many Plaintiffs and class members signed agreements with various authorized Delivery Providers"); Hucek Decl., Ex. 1, at 3–8. Further, Plaintiffs' mere repetition of conclusory allegations from their FAC, *see* Opp. at 12–13, are unsupported by any well-pleaded facts and fall far short of establishing standing via any actual reputational injury. *See* Mot. at 15. Any allegation that Google has damaged Plaintiffs' reputations "by associating Plaintiffs [with] websites and Delivery Providers over whom they do not exert control," FAC ¶ 112, is belied by the fact that *Plaintiffs themselves chose to associate* their restaurants and websites with Delivery Providers*, see* FAC ¶ 29; Hucek Decl., Ex. 1, at 3–8.

Second, in response to Google's "proximate cause" argument, Plaintiffs assert that their allegation that Google diverts customers from Plaintiffs' websites to Google's and Delivery Providers' websites, resulting in allegedly higher fees, satisfies *Lexmark*'s proximate cause requirement. *See* Opp. at 12. Not so. As explained in Google's Motion, Plaintiffs have not alleged that Google charges Plaintiffs, their customers, or the Delivery Providers any fees whatsoever—which Google does not—and the FAC does not allege that Plaintiffs derive any less revenue or pay any higher fees for orders placed through Google's Storefront as opposed to orders placed using the Delivery Provider links on Plaintiffs' own websites. *See* Mot. at 16. Moreover, Plaintiffs *cannot* plead such harm because Google's search results pages merely connect customers to Plaintiffs' own websites and Delivery Providers; they have no effect whatsoever on the fees that Plaintiffs have negotiated with those Delivery Providers.

The only case that Plaintiffs cite to rebut Google's standing argument is a pre-*Lexmark* decision applying the Ninth Circuit test that the Supreme Court displaced. *See* Opp. at 11 n.29 (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011)). In that case, the Ninth Circuit concluded that the parties were direct competitors, and thus a presumption of commercial injury was appropriate because they competed for referral revenue such that "[s]ales gained by one are [] likely to come at the other's expense." *TrafficSchool.com*, 653 F.3d at 825–26. In contrast, Plaintiffs here allege that Google sends any orders placed either to Plaintiffs themselves or to a Delivery Provider with whom the Plaintiffs have contracted, who then routes the order to the restaurant "just as if the order originated from the receiving Delivery Provider's proprietary platform." FAC ¶ 72. Google does not sell any competing products or services, and the FAC fails to plead any *facts* creating a presumption of commercial injury. *See Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019).

Finally, while Plaintiffs' Opposition asserts that Google does not challenge their standing

to assert a false association claim, Opp. at 9–10, that is incorrect. *See* Mot. at 13–17 (challenging both false advertising and false association claims on standing grounds). As Google argued in its Motion, courts in this district have recognized that the *Lexmark* standing analysis applies to false association claims just as it does to false advertising claims. *See id.* at 13, n.11 (listing cases). Therefore, Plaintiffs lack standing to assert their false association claim for the same reasons they lack standing to assert a false advertising claim.

### C.    Plaintiffs' false advertising claim fails.

Google's Motion identified three additional reasons why Plaintiffs' false advertising claims should be dismissed. *See* Mot. at 17–20. Plaintiffs wholly fail to address two of these arguments in their Opposition: they nowhere explain how their false advertising claim differs from their false association claim or how their false advertising claim differs from their trademark infringement claim. *See Id.* at 18. Because Plaintiffs have no response to these arguments, their false advertising claim should be dismissed as duplicative.[6] *See Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022).

Plaintiffs address only the third of Google's arguments with respect to false advertising—that Plaintiffs' claim fails for insufficient pleading. In its Motion, Google presented four pleading deficiencies with Plaintiffs' false advertising claim, any one of which is sufficient to warrant dismissal.[7] Plaintiffs fail to rebut Google's argument that any (supposedly) false statement was

---

[6] At best, Plaintiffs respond only that because they pleaded false advertising and false association under a single cause of action, the Court should not dismiss their false advertising claim. *See* Opp. at 14. But false advertising and false association claims under the Lanham Act are separate causes of action brought under separate statutory sections and require differentiated pleading. *See Welk Resort Grp.*, 2019 WL 1242446, at *15–16. Plaintiffs should not be permitted to avoid dismissal of separate claims by artfully pleading the claims together in their FAC.

[7] *See* Mot. at 18–20 (arguing that Plaintiffs failed to adequately plead: (1) lack of a false statement of fact, (2) lack of any false statement in commercial advertisement, (3) lack of allegation that supposedly false statement actually deceived or had the tendency to deceive a substantial segment of the audience, and (4) that supposedly false statement harmed Plaintiffs).

not made as part of any "commercial advertisement." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014). As to the "false statement" requirement, Plaintiffs do nothing more than regurgitate the vague and conclusory allegations in their FAC, *see* Opp. at 14, which fail to identify any "specific and deceptive" statement at all, much less with the particularly required by Rule 9(b). *See Cisco Sys., Inc. v. Dexon Comput., Inc.*, 2021 WL 5848080, at *9 (N.D. Cal. Dec. 9, 2021). With respect to whether the supposedly false statement actually deceived or had a tendency to deceive, Plaintiffs similarly offer up only conclusions devoid of any well-pleaded factual support. *See* Opp. at 15. Finally, with respect to any alleged harm caused by the supposedly false statements, Plaintiffs fail to point to any allegations that Google's conduct has resulted in a diversion of sales from Plaintiffs to Google and do not provide more than mere conclusory allegations regarding dilution of goodwill. *Id.* at 10, 15. This is insufficient to withstand dismissal, and Plaintiffs' false advertising claims fail.

        **D.**        **Plaintiffs fail to allege a counterfeiting claim.**

Plaintiffs cannot salvage their counterfeiting claim for two reasons. **First**, Plaintiffs' Opposition fails to rebut Google's argument that Google has not used Plaintiff Everfresh's mark to offer the same services for which the mark is registered ("Restaurant services" and "Take-out restaurant services"), but rather that Google has used Plaintiff's mark in connection with a separate service: providing web search and indexing. *See* Mot. at 21–22*; see also Carter v. Oath Holdings Inc.*, 2018 WL 5819458, at *2 (N.D. Cal. Nov. 5, 2018), *aff'd*, 788 F. App'x 436 (9th Cir. 2019) ("[C]ourts have held that an online provider does not 'use' a mark under the meaning of the Lanham Act when its search engine returns a search result based on an input of a consumer."). As Google's Motion explained, the FAC itself contradicts the claim that Google accepts food orders, provides delivery services, or prepares meals. *See* Mot. at 21–22. Rather, Google merely indexes information and provides web results that connect consumers to

Plaintiffs' own restaurants and contracted Delivery Providers, which provide the restaurant and take-out restaurant services. *Id*. Those are not "restaurant services." Because the FAC contains no well-pleaded facts to support Plaintiffs' conclusory contention that Google offers "identical" services to those for which Plaintiff Everfresh's service mark is registered—particularly given that Google is "in a wholly different industry" than the trademark holder, *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2800 (2021)—Plaintiffs' counterfeiting claim should be dismissed.

*Second*, Plaintiffs nominally challenge the argument that they have not put forth any well-pleaded facts showing likelihood of confusion. *See* Opp. at 8. But in so doing, Plaintiffs fail even to mention the applicable legal standard—that of a "reasonably prudent consumer" who is "accustomed to shopping online," *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015), much less satisfy that standard. Plaintiffs cannot dispute that all of the Google webpages at issue are branded with Google's logo, font, and color scheme; that all are offered from the www.google.com domain; and that they use only the plain text of Plaintiff Everfresh's mark in response to search queries seeking the same information. *See, e.g.*, FAC ¶¶ 47–56, 63, 66, 103, Figs. 5, 10; *see also* Hucek Decl., Ex. 5, at 2–3. No "reasonably prudent consumer" can be confused that Google is providing a web indexing service of information displayed on Plaintiffs' own websites and those of their Delivery Provider contractual partners. And no reasonably prudent consumer would believe Google is offering to prepare or deliver food from Plaintiffs' restaurants. Plaintiffs have failed to state a claim for counterfeiting.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Google's motion in its entirety.

| | |
|---|---|
| Dated: October 10, 2022 | KEKER, VAN NEST & PETERS LLP |
| | By: /s/ Benjamin Berkowitz |
| | BENJAMIN BERKOWITZ |
| | MICHELLE YBARRA |
| | CODY S. HARRIS |
| | KRISTIN HUCEK |
| | GREGORY WASHINGTON |
| | LUKE APFELD |
| | |
| | Attorneys for Defendant |
| | GOOGLE LLC |